UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>  v.<br><br>Robert James Hanna,<br><br>    Defendant. | No. 2:20-cr-00006-KJM<br><br>ORDER |

  Defendant Robert Hanna moves to vacate the judgment in this criminal case and for resentencing under 28 U.S.C. § 2255. As explained in this order, he has not shown his attorney provided ineffective assistance, and he has not shown he was deprived of due process, so the court **denies** the motion.

**I. BACKGROUND**

  Hanna pleaded guilty to violating 18 U.S.C. § 922(g)(1), which bars those who have been convicted of a felony from possessing firearms. *See* Plea Agreement at 1, ECF No. 24. He was represented at that time by Jessica M. Graves. *See id.* at 7. In his plea agreement, he and the government agreed his Sentencing Guidelines range likely would be calculated using a base offense level of twenty because he had previously been convicted of a "crime of violence," i.e., assault in violation of California Penal Code section 245(a)(4)(A). *Id.* at 6 (citing U.S.S.G. § 2K2.1(a)(4)(A)); *see also id.* Ex. A at 2 (factual basis).

1

1    The Probation Office prepared a presentence investigation report (PSR) and, as the parties anticipated, used a base offense level of twenty, relying on the Guideline provision cited in Hanna's plea agreement. *See* PSR at 7, ECF No. 28. The PSR identified a Guideline range of 77–96 months' incarceration, below the ten-year statutory maximum sentence; there was no statutory minimum. *See id.* at 22, 25 (citing 18 U.S.C. § 924(a)(2)). Hanna, represented by Graves, did not object to the Probation Office's calculation of his base offense level or its reliance on the Guideline provision for crimes of violence, and neither Hanna nor Graves objected to the calculated sentencing range at his sentencing hearing. *See* Def.'s Formal Objs. & Sent. Mem., ECF No. 29; Besabe Letter (Jan. 14, 2021), ECF No. 28-1; Graves Letter (Dec. 28, 2020), ECF No. 28-2; Sent. Hr'g Tr., ECF No. 53. The court imposed a sentence at the top of the range: 96 months in prison followed by a 36-month term of supervised release. *See* Sentencing Mins., ECF No. 31; Judgment & Commitment, ECF No. 35.

About two years after he entered his guilty plea, Hanna filed a pro se motion to correct or vacate his sentence under 28 U.S.C. § 2255. ECF No. 41. The court appointed an attorney to represent him in making these claims, *see* Order (Oct. 7, 2022), ECF No. 44, and his appointed counsel has amended his motion, *see generally* Am. Mot., ECF No. 75. Hanna now relies on two arguments. First, he argues his previous attorney provided constitutionally ineffective assistance at sentencing because she did not dispute that his conviction under Penal Code section 245(a)(4) was a "crime of violence." *See id.* at 12–21. Second, he argues the sentencing proceedings were "fundamentally unfair, in violation of his right to due process." *Id.* at 22–23. The government opposes the motion, and briefing is complete. *See generally* Opp'n, ECF No. 77; Reply, ECF No. 83.

After the parties completed their briefing, the Ninth Circuit issued an order vacating a decision both parties had cited in their briefs and granting the government's request to take that case en banc. *See* Min. Order, ECF No. 84 (citing *United States v. Gomez*, 115 F.4th 987 (9th Cir. 2024), *vacated, pet. reh'g granted*, 133 F.4th 1083 (9th Cir. 2025)). This court directed the parties to meet and confer and inform the court whether they believed this court should defer its decision on the pending motion, permit supplemental briefing or issue some other order. *Id.* The

2

1   parties requested permission to file supplemental statements, which the court granted. ECF
2   No. 88. The parties now agree the court can resolve the pending motion while the en banc
3   proceedings in *Gomez* are pending. ECF Nos. 89, 90. The court agrees it can properly resolve
4   the matter without waiting and now takes the matter under submission without holding a hearing.
5   E.D. Cal. L.R. 230(g).

## II.   EFFECTIVE ASSISTANCE OF COUNSEL

The Constitution guarantees defendants the right to the effective assistance of counsel in criminal prosecutions against them. *See* U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show an attorney's assistance was ineffective in violation of that guarantee, a defendant must prove both that the attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

In this case, as explained, Hanna argues an effective attorney would have argued his conviction under California Penal Code section 245(a)(4) was not a "crime of violence." But at the time Hanna was sentenced in January 2021, the Ninth Circuit repeatedly had confirmed, in a variety of statutory and regulatory situations, that violations of California Penal Code section 245(a) qualified as crimes of violence.[1] *See Sunum v. Barr*, 778 F. App'x 538, 539 (9th Cir. 2019) (unpublished); *United States v. Vasquez-Gonzalez*, 901 F.3d 1060, 1065–68 (9th Cir. 2018); *United States v. Solomon*, 700 F. App'x 682 (9th Cir. 2017) (unpublished); *United States v. Heron-Salinas*, 566 F.3d 898, 899 (9th Cir. 2009) (per curiam); *United States v. Grajeda*, 581

---

[1] Before August 2011, section 245(a) comprised only three subsections. Subsection (a)(4) was at that time part of subsection (a)(1), which provided for the punishment of "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury." *See* 2011 Cal. Legis. Serv. Ch. 183 (AB 1026) (West) (amending § 245(a) to add § 245(a)(4)). Today, section (a)(1) punishes "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm," whereas subsection (a)(4) punishes "[a]ny person who commits an assault upon the person of another by any means of force likely to produce great bodily injury." According to the Legislative Counsel's Digest of Assembly Bill 1026, this change was "technical" and "nonsubstantive." *Id.*

1   F.3d 1186, 1197 (9th Cir. 2009). That is why Graves made no objection. *See generally* Graves
2   Decl., ECF No. 75-2. In her view, an objection would have been "futile." *Id.* ¶ 6. The court
3   agrees. If Graves had argued in January 2021 that a conviction under section 245(a)(4) was not a
4   "crime of violence," then this court would have been bound to reject the argument.

5   Hanna argues an effective attorney would have objected in anticipation that the Ninth
6   Circuit would eventually reconsider its position and conclude instead that convictions under
7   section 245(a)(4) are not crimes of violence, as the Ninth Circuit panel held in its now-vacated
8   opinion in *Gomez*. *See generally* 115 F.4th 987. Hanna thus contends this is one of the "rare
9   cases" in which an attorney must object in order to comply with the relevant professional norms,
10  even if the court would be bound to overrule that objection. *See* Reply at 2. He relies primarily
11  on the Third Circuit's decision in *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d
12  Cir. 1989). *See* Reply at 2–3. The Third Circuit warned in *Forte* that "the case [was]
13  extraordinary on the facts," and it described its decision as "very narrow." 865 F.2d at 634. It
14  urged readers not to interpret its reasoning "broadly," *id.*, so a good deal of caution is warranted
15  in reading and applying the decision.

16  The defendant in *Forte* was challenging a rape conviction following a jury trial in which
17  he was convicted. *Id.* at 61. The defendant was white, the alleged victim was black, and the
18  prosecution had used its peremptory challenges to excuse "all or almost all of the white jurors
19  called" without any objection from the defense. *Id.* At the time, the Supreme Court had granted
20  certiorari in *Batson v. Kentucky*, in which it would ultimately hold that the Equal Protection
21  Clause of the Fourteenth Amendment bars prosecutors from using peremptory challenges to
22  exclude members of a defendant's race from a jury based on the potential juror's race. *See*
23  *generally* 476 U.S. 79 (1986). At the time of defendant's trial in *Forte*, the Court had not yet
24  issued its opinion. *See* 865 F.2d at 61. Even though *Batson* was still pending, it would not have
25  taken much foresight—even any at all—for defense counsel to know an objection was worth
26  raising. *See id.* Before Forte's trial, he had engaged a second attorney to consult with his trial
27  counsel, and that second lawyer had advised his trial counsel that *Batson* was pending. *See id.* In
28  fact, both Forte and this second lawyer had specifically instructed his trial counsel to object if the

4

prosecution attempted to use peremptory strikes to excuse white jurors. *See id.* But she did not object: she, like the prosecution, had used peremptory strikes in a racially discriminatory manner in the past, so she was "too embarrassed" to object. *See id.* at 61–62.

The Third Circuit was confident in these "unique circumstances" that the "trial attorney's failure to object to the prosecutor's use of peremptory challenges was unreasonable under prevailing standards." *Id.* at 62. An objection to preserve the *Batson* issue "would have required little effort and would not have been a reprehensible or unprofessional act." *Id.* at 62–63. To the contrary, attorneys representing other defendants in other cases had been making *Batson*-style objections, including in cases tried in the Virgin Islands. *Id.* at 63. The Third Circuit also believed the fundamental injustice of racially discriminatory peremptory strikes was obvious: "the attorney was simply asked to object if it appeared that the prosecutor, a public official, was carrying out her duties in a racially prejudicial manner," and "the Supreme Court had long held that a state denies equal protection of the laws when a [Black defendant] is put on trial before a jury from which [Black jurors] are purposefully excluded." *Id.* And on top of all this, both Forte and the second attorney had specifically instructed his trial attorney to make a *Baston*-style objection, but she had shied from objecting out of mere personal embarrassment. *See id.*

The Supreme Court and Ninth Circuit appear not to have had an opportunity to hear a similar case. The parties cite no binding authority, and the court's own searches have yielded none. In other cases that shed some light on the question here, other federal courts generally have looked for the same type of flashing signals that were decisive in *Forte*—something to "sufficiently" or "clearly" or "plainly" "foreshadow" the coming change in the law. *E.g.*, *Chase v. MaCauley*, 971 F.3d 582, 593 (6th Cir. 2020); *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013); *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999); *Mayo v. Henderson*, 13 F.3d 528, 535 (2d Cir. 1994). A good signal might be apparent in the decisions by attorneys representing other clients to raise the same or a similar objection in similar cases. *See, e.g.*, *Chase*, 971 F.3d at 588. Courts in the relevant jurisdiction might also have expressed their expectations that change was coming, perhaps in dicta, or individual judges and justices might have done the same in dissenting or concurring opinions. *See, e.g.*, *id.*; *Shaw*, 721 F.3d at 911; *Mayo*, 13 F.3d at 535. Or an

5

1  intervening opinion by the United States Supreme Court might have exposed obvious flaws in the
2  otherwise binding decisions of an inferior appellate court. *See, e.g., Orazio v. Dugger*, 876 F.2d
3  1508, 1513 (11th Cir. 1989). By contrast, federal appellate courts have not been willing to say an
4  attorney should have anticipated a change in the law just because courts in other jurisdictions had
5  settled on a different rule. *Larrea v. Bennett*, 368 F.3d 179, 184 (2d Cir. 2004). Persistent
6  uncertainties in the legal landscape also might show it was not possible to foresee any particular
7  change or development. *See, e.g.*, *Lucas*, 179 F.3d at 420 (holding "issue was not plainly
8  foreshadowed" because courts "continued to grapple with the problem" after defendant's trial).

9      Here, Hanna has not shown the circumstances clearly or plainly foreshadowed a coming
10 change at the time of his plea and sentencing. He argues the Supreme Court's 2021 opinion in
11 *Borden v. United States* vindicates his position, but as noted, the Supreme Court did not issue its
12 opinion in *Borden* until after Hanna's sentencing. *See generally* 593 U.S. 420 (2021) (decided
13 June 10, 2021). And rather than implying a favorable legal change was likely, the Court's
14 decision to grant certiorari in *Borden* implied little for the district courts and defendants whose
15 cases were pending in courts within the Ninth Circuit. The question presented in *Borden* was
16 whether the "use of force clause in the Armed Career Criminal Act," which uses the same
17 language as the disputed Guideline definition in Hanna's case, "encompass[es] crimes with a
18 *mens rea* of mere recklessness." Pet. Writ Cert., *Borden v. United States*, No. 19-5410 (July 24,
19 2019). The Ninth Circuit was among those that had previously held, like the Supreme Court
20 eventually did in *Borden*, that a statute does not criminalize a "violent felony" unless it punishes
21 purposeful or knowing conduct. *See Borden*, 593 U.S. at 425 & n.2 (citing *United States v.*
22 *Begay*, 934 F.3d 1033, 1039 (9th Cir. 2019), *vacated and on reh'g en banc*, 33 F.4th 1081 (2022)
23 (en banc)). As summarized above, the Ninth Circuit had held for many years before *Borden* that
24 an assault under section 245(a) qualified as a "crime of violence" under the Sentencing
25 Guidelines[2] specifically because section 245(a) punishes intentional conduct, rather than merely

---

[2] Like the definition at issue in Hanna's case, the definition at issue in *Grajeda* applied to any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 581 F.3d at 1189–90 (quoting U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2006)).

1 reckless or negligent actions. *See Grajeda*, 581 F.3d at 1192–97 (citing *Heron–Salinas*, 566 F.3d
2 899). So at the time of Hanna's sentencing, even if the Supreme Court ultimately were to agree
3 with the petitioner's position in *Borden*, it seemed most likely the Court would be adopting the
4 rule that was already binding in Hanna's case.

5       This is not to say the Supreme Court's opinion in *Borden* banished all doubts about the
6 correct way to read section 245(a) in particular, nor what type of mental state that statute requires.
7 In fact, after *Borden* was decided, at least one district court within the Ninth Circuit urged the
8 circuit to revisit section 245(a), even though that district court believed it was bound by the Ninth
9 Circuit's previous decisions. *See United States v. Man*, 553 F. Supp. 3d 718, 721 (2021). But
10 when the defendant appealed, the Ninth Circuit declined to revisit the issue. "[W]e have
11 previously held," it wrote in its unpublished memorandum disposition, "that section 245 offenses
12 are crimes of violence—and thus, violent felonies—precisely because the statute requires a mens
13 rea greater than recklessness." *United States v. Man*, No. 21-10241, 2022 WL 17260489, at *1
14 (9th Cir. Nov. 29, 2022), *aff'g* 553 F. Supp. 3d 718. As noted above, it was not until just last
15 year, in 2024, that the Ninth Circuit concluded in the *Gomez* panel opinion, now vacated, that its
16 previous decisions were clearly irreconcilable with the Supreme Court's opinion in *Borden*. *See*
17 *generally* 115 F.4th 987. In short, the relevant law was clear at the time Hanna was sentenced.
18 Only after his sentencing did the clear waters turn muddy, and they have remained unclear since
19 then. Courts have rejected similar motions in the presence of similarly persistent uncertainties.
20 *See, e.g.*, *Lucas*, 179 F.3d at 420.

21       Hanna also argues attorneys within the local defense bar had urged their colleagues to
22 object and argue that their clients' previous convictions were not "crimes of violence." *See, e.g.*,
23 Reply at 4. To this end, he attaches copies of two presentations displayed in continuing legal
24 education training sessions for criminal defense attorneys in 2016 and 2019. *See* McClintock
25 Decl. ¶¶ 5–7 & Attachments, ECF No. 83-1. He also cites a declaration by an experienced
26 defense attorney, who recalls that since 2015, there have been "challenges all over the country by
27 defendants whose sentences were enhanced based on a finding that a prior conviction constitutes
28 a 'crime of violence' or 'violent felony' under various provisions of federal law." McClintock

7

Decl. ¶ 4, ECF No. 83-1. The same attorney also believes "ordinary legal research" would have revealed the Ninth Circuit's interpretation of section 245(a) and California case law was erroneous at the time of Hanna's sentencing. *See id.* ¶ 8.

The materials Hanna provides show it was common or expected for defense attorneys to argue that specific crimes did not qualify as "crimes of violence" if a conviction could be obtained on the basis of evidence showing only recklessness, or some other less culpable state of mind. *See, e.g., id.* at 73.[3] They do not show, however, that attorneys were commonly raising objections about California Penal Code section 245(a). Nor do they show whether defense attorneys were arguing the Ninth Circuit had wrongly interpreted section 245(a) as punishing only knowing and intentional conduct. A clever, resourceful and creative attorney may have been capable of constructing a viable argument for revisiting the Ninth Circuit's binding decisions at the time Hanna was sentenced, but Hanna has not demonstrated the prevailing professional standards demanded that effort. Rather, this case resembles others in which courts have held that attorneys provided effective assistance. *See, e.g., Larrea*, 368 F.3d at 184 (agreeing "[a] skilled attorney might have found [favorable out-of-jurisdiction] cases and crafted an argument based on them" but rejecting petitioner's argument that trial attorney's failure to do so was "outside the wide range of reasonably competent assistance.").

Finally, Hanna contends a competent attorney would have understood at the time of his sentencing that the Supreme Court had taken an interest in the relevant definition of "crimes of violence." *See* Reply at 4–5. The Supreme Court had by then granted certiorari in *United States v. Walker*, another case about whether criminal assault statutes punishing reckless actions were crimes of violence. *See generally* 2017 U.S. Dist. LEXIS 104358 (W.D. Tenn. 2017), *rev'd*, 769 F. App'x 195 (6th Cir. 2019) (per curiam) (unpublished), *cert. granted*, 140 S. Ct. 519 (2019). The Court later dismissed *Walker* as moot after the petitioner died. *See* 140 S. Ct. 953 (2020). But for the same reasons the implications of the Supreme Court's opinion in *Borden* were unclear in 2020, the Court's decision to grant the certiorari petition in *Walker* did not cast doubt on the Ninth Circuit's longstanding interpretation of section 245(a).

---

[3] Pages cited in this document are those applied by the CM/ECF system.

1      In sum, Hanna has not demonstrated the attorney who represented him during his plea
2 negotiations and sentencing provided ineffective assistance under the first prong of the *Strickland*
3 test. Given the long line of then-binding Ninth Circuit decisions confirming convictions under
4 section 245(a) were "crimes of violence," it was reasonable for Hanna's attorney to devote her
5 time and attention to other issues. *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). The
6 court need not and does not reach the second prong of the *Strickland* test.

### III.   DUE PROCESS

Hanna also argues his sentencing was "fundamentally unfair" because "he was sentenced under an erroneous Guidelines calculation." Am. Mot. at 22. In opposition, the government contends Hanna has no "due process right to a sentence within a particular Guidelines range" under *Beckles v. United States*. Opp'n at 9–10 (citing 580 U.S. 256 (2017)). In reply, Hanna clarifies he did not mean to "argue that he has a due process right to be sentenced within a particular guideline range." Reply at 7; *see also* Def.'s Suppl. Stmt. at 3–4, ECF No. 87 (similarly disclaiming any argument "that his conviction is not a crime of violence as defined under an unconstitutional residual clause"). He argues only "that he has a due process right to be sentenced based on accurate facts and law." Reply at 7. He contends he was deprived of that right because his sentence "is based in part on the understanding that his prior conviction under California Penal Code section 245(a)(4) constitutes a crime of violence." *Id.* at 8.

It is true that a sentence imposed on the basis of "false or unreliable" information deprives a defendant of due process. *United States v. Vanderwerfhorst*, 576 F.3d 929, 935–36 (9th Cir. 2009). But at the time of Hanna's sentencing, it was not "false" for the parties or this court to conclude that a conviction under section 245(a)(4) was a "crime of violence." At the time, that was an accurate statement of the law, as explained in the previous section. In reality, Hanna's argument is not that this court relied on some objective falsehood or unreliable information, but rather that the law changed: in 2020, his conviction under section 245(a)(4) was a crime of violence; now that conclusion is in doubt. This is another way to say the Supreme Court's opinion in *Borden*, as interpreted by the Ninth Circuit in the now-vacated *Gomez* opinion, should have governed Hanna's sentencing even though he was sentenced before both *Borden* and *Gomez*

were decided. The government argues the Supreme Court's decision in *Borden* has no such retroactive effect. *See* Opp'n at 11–12.

Whether a Supreme Court decision is "retroactive" as relevant here generally depends on whether it creates a "novel" and "substantive" rule. *Chaidez v. United States*, 568 U.S. 342, 347 (2013). When the Supreme Court announces a "new" procedural rule, as opposed to merely applying a "settled rule," "a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding," with the narrow exception of "watershed rules of criminal procedure" and "rules placing conduct beyond the power of the government to proscribe." *Id.* at 347 & n.3 (citing *Teague v. Lane*, 578 U.S. 120 (1989)) (quotation marks and alterations omitted). By contrast, when the Supreme Court announces a rule that is both "new" and "substantive," its decision is retroactive; it reaches even convictions "that are already final." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004); *see also, e.g.*, *Welch v. United States*, 578 U.S. 120, 129–30 (2016) (deciding new rule was substantive and thus retroactive).

The government argues the Supreme Court's decision in *Borden* is not retroactive because it announced only a new procedural rule. *See* Opp'n at 11–12. The court agrees. First, setting aside for the moment the procedural-versus-substantive distinction, *Borden* created a "new" rule. "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301. "To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* (emphasis in original). In this sense, the Court's opinion in *Borden* created a "new" rule. The outcome was not "dictated by precedent" because, as the plurality explained in *Borden*, the Court was reaching an issue it had "reserved" in two previous cases. *See* 593 U.S. at 429 (citing *Leocal v. Ashcroft*, 543 U.S. 1 (2004) and *Voisine v. United States*, 579 U.S. 686 (2016)).

Second, the Court's decision in *Borden* resolved a "procedural" dispute for purposes of this case. *Borden* may very well have been a "substantive" decision for those who were subject to the statutory mandatory minimum sentence provided in 18 U.S.C. § 924(e)(1). A rule is substantive "if it alters the range of conduct or the class of persons that the law punishes." *Welch*,

10

578 U.S. at 129 (quoting *Schriro*, 542 U.S. at 353). In *Borden*, the Supreme Court decided an offense was not a "violent felony" under 18 U.S.C. § 924(e)(2)(B) if it could be committed with only a reckless or negligent state of mind. *See* 593 U.S. at 429–34. The Court's opinion thus limited the "range of conduct" that qualifies for the statutory minimum sentence imposed in § 924(e)(1). But Hanna was charged under a different statute and was not subject to that mandatory minimum sentence, or any mandatory minimum. His argument targets the Guideline range this court considered at his sentencing, not the mandatory minimum. The Sentencing Guidelines are not mandatory; they are "effectively advisory." *Beckles*, 580 U.S. at 265 (quoting *United States v. Booker*, 543 U.S. 220, 245 (2005)). They are "the starting point and the initial benchmark," *Gall v. United States*, 552 U.S. 38, 49 (2007)), and they serve as "the framework for sentencing," *Peugh v. United States*, 569 U.S. 530, 542 (2013), but ultimately, they "merely guide the district courts' discretion," *Beckles*, 580 U.S. at 265. Although this court would have been guided by a different range if *Borden* had been decided before Hanna's sentencing, the law—the minimum and maximum sentences—would have been the same. In this sense, *Borden* changed "the manner of determining" Hanna's sentence, "altered the range of permissible methods" for deciding on a sentence and "allocate[d] decisionmaking authority" differently. *Schriro*, 542 U.S. at 353 (emphasis omitted). It is for this reason that *Borden* established only a "procedural" rule in Hanna's case, which is not "retroactive" in the sense that would be necessary to resolve the due process question in Hanna's favor.

IV.   **CONCLUSION**

The court **denies** the amended motion to alter or amend defendant's sentence (ECF No. 75).

IT IS SO ORDERED.

DATED: June 4, 2025.

SENIOR UNITED STATES DISTRICT JUDGE